# Commonwealth *v.* Leonard, Appellant.

*Husband and wife—Support—Excessive order.*

Upon a petition for an order on a husband for the support of his wife and child, there was evidence that defendant's earnings of $40.00 a week did not fully measure his earning capacity. He did not seek employment in the business with which he was familiar and there was indication of an attempt to lower his earning capacity for the purpose of having the order reduced.

Where in such case there was no evidence that defendant's earning capacity exceeded $60.00 a week, an order of $35.00 a week is excessive and will be reduced to $25.00 a week.

The purpose of such proceeding is not to punish the defendant for his conduct towards his family but to secure such an allowance for their support as is reasonable, having in view his ability to pay and the conditions under which the family lives; the foundation on which the judgment of the Court must rest is the right of the wife to such support from her husband, as she might reasonably expect from one in his financial situation.

Argued November 15, 1927. Appeal No. 299, October T., 1927, by defendant, from order of Q. S. Delaware County, December T., 1926, No. 80. In the case of Commonwealth of Pennsylvania v. John C. Leonard. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Modified.

Petition for an order on a husband for the support of his wife and child. Before FRONEFIELD, P. J.

The facts are stated in the opinion of the Superior Court.

The Court ordered the defendant to pay $35.00 a week. Defendant appealed.

*Error assigned* was the order of the Court.

*William C. Alexander,* for appellant.

*Bruce W. Long,* Assistant District Attorney, and with him *William Taylor,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1928:

Our duty in disposing of this appeal by the defendant in certain desertion and non-support proceedings is to determine whether the discretion of the court below has been properly exercised in making an order directing him to pay $35 per week for the support of his wife and son, seven years of age. Appellant, contending that his wages at the time the order was made were only $40 per week, argues that the order appealed from was an abuse of discretion. It is obvious that the order was not based upon the amount of income appellant was receiving at the time it was made but upon the belief of the learned trial judge that appellant was attempting ''to escape the payment of a proper sum for the support of his wife and son,'' and upon a finding, appearing in his opinion, that ''the defendant can make, if he desires, or is actually making the proper amount to justify the order.'' If we could find in this record any competent evidence to justify this conclusion, or a substantial conflict in the evidence with respect to the actual income of appellant, we would not be disposed to disturb the order or to substitute our judgment for that of the court below: Commonwealth ex rel. v. May, 77 Pa. Superior Ct. 40; Commonwealth ex rel. v. Slade, 91 Pa. Superior Ct. 533. The trial judge accorded the parties a full and most patient hearing and the conclusions reached were not hastily arrived at, but upon a careful examination of the entire record, in the light of established and applicable principles of law, we are unable to find competent evidence to support them.

In the opinion of this court in the recent case of Commonwealth ex rel. v. Milne, 90 Pa. Superior Ct. 68, written by Judge KELLER, the proposition that a wife, under the circumstances present in this case, is not entitled to more than one-third of the income from the property and labor of her husband was so clearly

stated and the authorities so fully reviewed that further discussion is unnecessary. The only distinction is that in this case we have a wife and one child. In Commonwealth ex rel. v. Sherritt, 83 Pa. Superior Ct. 301, the issues were similar to those here involved and Judge HENDERSON announced for this court these principles as applicable to their determination. The purpose of the proceeding is not to punish the defendant for his conduct toward his family but to secure such an allowance for their support as is reasonable, having in view his ability to pay and the conditions under which the family lives; the foundation on which the judgment of the court must rest is the right of the wife to such support from her husband as she might reasonably expect from one in his financial situation, but it is not the prerogative of the court to divide his estate. In that case, as in this, the defendant had previously been earning an amount considerably larger than the amount of his income at the time the order was made and there, as here, it was charged that he had improvidently spent a large part of his earnings. Upon this feature of the case it was said: "The income received by the defendant during the prosperous period of business with which he was connected may have been improvidently spent, but we have no means in a proceeding of this character to correct his extravagance or imprudence." It was further observed that while criticisms of the defendant's conduct may be well founded "they do not aid us in the financial calculation which is presented by the appeal."

The first hearing in these proceedings was on November 12, 1926, and such orders were made from time to time as the circumstances of the parties seemed to justify, but the final order was not entered until July 29, 1927. The parties were married October 12, 1917, and separated August 29, 1925. Until December 15,

1925, defendant supported his wife and child and after that date contributed $10 a week for the support of the child and also paid the carrying charges of the home in which the wife and child remained, while he had a room at the Y. M. C. A. in Philadelphia. From June to November, 1926, the defendant contributed nothing toward the support of his family or the upkeep of the home. The testimony as a whole indicates that this is one of those unfortunate cases in which the real remedy is with the parties themselves and is not to be found in anything the courts can do. In this proceeding we are not concerned with the causes of the separation except in so far as they may throw light on the present situation and attitude of the parties. Each seems to have had extravagant ideas, and they were trying to live beyond the financial ability of the defendant. Quarrels, apparently due to differences in temperament and tastes, naturally arose and have culminated in the separation, but the wife seems to be sincerely desirous of a reconciliation and to be willing to live in such home and under such financial circumstances as the defendant may be able to provide. The defendant, however, shows no disposition to resume the family relation. The material facts developed at the first hearing were that at the time of the separation the parties were living in a property at 126 Kent Road, Stonehurst, Upper Darby Township, Delaware County, for which they paid $10,500 and upon which there were mortgages aggregating $8,500. Defendant's father, John L. Leonard, is engaged in the wholesale commission business in Philadelphia and defendant was employed by him at a fixed salary of $40 per week. It is contended by counsel for the wife that defendant also had, and still has, an interest in this business. The evidence relating to this matter is not very satisfactory. It appears however that the property in which the business is conducted was purchased

by defendant's father and that he gave his son and an employe who had been with him for many years, Ellsworth Weatherby, shares in the business, but at the time of the hearing the father had taken a second mortgage on defendant's interest. The father testified: "I paid for it all, and gave them their third interest, and we worked along until we got it paid for. Now, then, he comes along and gets in this mess, and I have to take a second mortgage on his other, third, interest of it. He don't own a dollar of it. What good is that to him? The other fellow has got his. Q. You have a mortgage on his third interest? A. Yes, sir. I have a first mortgage on the whole property, and a mortgage on his third interest." The testimony also shows that the business year ends in October and that for a number of years prior to 1927 the father gave defendant and the employe referred to a share in the profits each year the business made a substantial profit. This share is variously referred to in the testimony as a "gift" or a "bonus." For the year ending in October, 1925, the defendant received his wages at $40 per week, or $2,080, and also a share in the profits amounting to $2,895, or a total compensation of $4,975; during the year 1926 he received, in addition to his wages, $5,074 as his share of the profits, or a total of $7,154. In this connection it should be stated that the defendant, in addition to his salary of $40 per week, had the right apparently to draw upon his anticipated share of the profits and that during the year ending October, 1926, he had drawn more than $3,500 over and above his fixed salary of $40 per week, so that at the close of the year he received approximately $1,400 as the remainder of his share of profits. Defendant also owned twenty or twenty-five shares of building and loan stock. This was the general situation with respect to the earning capacity of defendant at the time of the first hearing in November, 1926, and the court then made an order directing defendant to pay

$27.50 per week for the support of his wife and child and to pay the carrying charges on the property, including interest on the mortgages, taxes, water rents, repairs, etc. The payments under this order would aggregate about $52 per week. At that hearing defendant's father, apparently a man of positive views and direct speech, and who feels that the troubles between his son and daughter-in-law are largely due to extravagance on the part of both and that they should be living together in more moderate circumstances, testified that his son is a first-class salesman and good executive but his efficiency has been impaired by this domestic discord; and unless his work improved he would be discharged. Within a month after the hearing the defendant was discharged and, instead of trying to obtain employment in the commission business, with which he was familiar, went to Norristown and secured employment as a bond salesman. He was able to make only $30 a week in that position. In the meantime a petition for an attachment was filed, based upon the failure of defendant to pay the carrying charges on the real estate. On May 2, 1927, defendant petitioned for a reduction of the order and at a hearing on May 4th it was shown that he had been re-employed by his father at $40 a week but without any share of the profits. The court declined at that time to make any modification of the order but suggested that the wife should remove from the property. At a further hearing on June 8, 1927, the wife claimed that a proposition had been made to her looking toward the institution of a collusive proceeding for an absolute divorce under the terms of which the defendant was to make an application, which would not be contested, for a divorce on the grounds of desertion and she was to be paid some six or seven thousand dollars in cash and the defendant was to pay the upkeep of the house during the two-year period. She stated that the proposition

was contained in letters between former counsel for defendant and for herself, respectively, who no longer appeared for either party. The court directed that the counsel referred to be subpoenaed to produce the letters at the next hearing but the record contains no further reference to this matter and we assume that there was no substantial foundation for the charge. On July 13, 1927, an application for an increase in the order was made upon the ground that the property had been sold at sheriff's sale to an outside purchaser who was willing to permit the wife to remain in the house at a rental of $70 per month. At the final hearing on July 29th it was shown that defendant had given up his room at the Y. M. C. A. and was then living in a room over the store; that he had disposed of his building and loan stock; and that he was still being paid $40 a week by his father but without any bonus or interest in the profits. At the conclusion of this hearing the original order was modified and the defendant directed to pay $35 per week. We agree with the court below that $40 per week does not measure the earning capacity of this defendant and that his discharge shortly after the first hearing, his failure to seek employment in the business with which he was familiar and in which he was well known and his reemployment by the father without any share in the profits are indicative of an attempt to lower the apparent earning capacity of the defendant for the purposes of this case. On the other hand, we are not satisfied that there is any evidence showing an earning capacity sufficient to justify the order appealed from. It is the present income and earning capacity which must control, but, as stated by this court in Commonwealth v. Knobloch, 89 Pa. Superior Ct. 216, in considering the ''sufficient ability'' of the husband, not only the actual amount earned should be considered, but all the attendant circumstances as well. The only evidence we can find in this record indicating the

probable earning capacity of defendant is the testimony of the father that in the produce business the average wages 'of a salesman, of the ability of defendant, are approximately $60 per week. The defendant testified that if he started in with a new employer he would be obliged to start at from $50 to $60 per week. Orders in cases of this kind are subject to modification from time to time as the earning capacity of the defendant is increased or diminished. We are of opinion that as this case now stands there is nothing to justify an inference that the defendant's present earning ability exceeds $60 per week, and that the established principles to which we have referred require a modification of the order to $25 per week.

The order of the court below is modified and it is now ordered that the defendant pay to his wife, Blanche V. Leonard, the sum of $25 per week for the support of herself and their minor child from July 29, 1927, and give bond with sureties to be approved by the Court of Quarter Sessions of Delaware County, or a judge thereof, in the sum of $500 for the faithful performance of this order, and that he pay costs in the court below and stand committed until the order is complied with. Costs on this appeal to be paid by appellant.