Keller *v.* Keller, Appellant.

Argued April 12, 1960. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-
GOMERY, JJ.

*Ruth F. Cooper*, with her *Dane Critchfield*, for appellant.

*John B. Nicklas, Jr.*, with him *McCrady & Nicklas*, for appellee.

OPINION BY WATKINS, J., June 15, 1960:

This is an appeal from the order of the court below in fixing the monthly payment of alimony pendente lite in the sum of $703.48 per month, which payment consists of the following: Five Hundred ($500) Dollars per month in cash to the appellee-wife, Mary F. Keller; the sum of $168.48 per month on the mortgage on the home now occupied by her and owned by Earl M. Keller, the appellant, and the appellee, as tenants by the entireties, plus the bills for gas, water and electricity consumed in the said home, which approximates $35 per month.

The parties were married December 31, 1934, and lived and cohabitated together until April 13, 1959, when the husband left the wife. There was one son born of this marriage, now of age, who is married and lives in his own home and works for his father, the husband, at the Keller-Irwin Laboratories, Inc. in Johnstown, Pennsylvania. The wife continues to reside alone in the family residence at 2816 Bethel Church Road, Bethel Park, Allegheny County, Pennsylvania. The evidence shows that for the year 1958 and for several years preceding that time, the husband had a total income of $34,200 per year, which he received as salaries, dividends and bonuses from three companies in which he had an interest. In addition to this

income, he was paid traveling expenses for travel and money expended while on the road, for these companies.

Effective January 1, 1959, the husband disposed of his interests in the Beitler-McKee Optical Co., of Pittsburgh, and the United States Optical Laboratories, of Cleveland, Ohio, in exchange for the entire control of the Beitler-McKee Laboratories, of Johnstown, Pennsylvania, now the Keller-Irwin Laboratories, Inc. In organizing the Keller-Irwin Laboratories some 45 shares of stock were distributed to other shareholders who had some minor interest in this business and the husband retained almost absolute control of this business. The salary to be paid to him was decided by the Board of Directors of this new company to be $15,000 a year, plus an expense account. However, this salary would not be indicative of the actual earnings of the husband since there is no record of the earning potential of this company or its business experience up to the time of the hearing.

In addition to this salary he will receive for a two-year period the sum of $3000 per annum, as a consulting fee from the other companies from which he withdrew. The record indicates that he will also receive other monies over a period of years from the two companies from which he withdrew. However, other than interest paid on the sums withheld, this would represent a return of capital rather than income. However, as was indicated on the record by the attorney for the husband, after his withdrawal from these companies, he was left in the same position as he was in previously, less monies representing capital gain, which were paid out for tax purposes. So that the income of the husband over the prior years is the only indication which this Court has of his earning capacity and capabilities. There is no doubt, and the husband indicated on the record, that additional income would be realized from

the new business in which he has the controlling interest; however, dividends or bonuses probably would not be declared as they desire to hold back some monies to create a surplus in the company and also to expand this business.

The Act of May 2, 1929, P. L. 1237, §47, 23 PS §47, provides: "In cases of divorce from bed and board, the court may allow the wife such alimony as her husband's circumstances will admit of, but the same shall not exceed the third part of the annual profit or income of his estate, or of his occupation and labor, . . ." The interpretation of this act, especially as it relates to alimony pendente lite, was recently set forth by this Court in *Marra v. Marra,* 189 Pa. Superior Ct. 180, 149 A. 2d 175 (1959). The order of the court below falls within the permitted limits of the act, considering the income of the husband which is on the record, however, it includes the monthly payment of the bills for gas, water and electricity consumed in the home. In the recent case of *Kordich v. Kordich,* 192 Pa. Superior Ct. 33, 159 A. 2d 274 (1960), this Court permitted the inclusion of such payment in the order for alimony pendente lite. However, in that case, the husband and wife both occupied the premises owned by the entireties. This case is not quite the same as the husband lives elsewhere and the wife occupies the premises alone. The payment of these utilities inures solely to the benefit of the wife and would be indefinite as to amount and solely within her control. The payment of the mortgage does inure at least one-half to the benefit of the husband and is to his interest to see that these monthly payments are made to protect his equity in the property and the court has many times stated, that inclusion of such payments in the order is permissible under the act.

This Court will not reverse except for a plain abuse of discretion. *Kordich v. Kordich,* supra. We there-

fore affirm the total amount of the order but amend the manner of payment in that the husband shall pay alimony to his wife in the sum of $535 per month and make all payments on the mortgage in the amount of $168.48 per month.

The husband, while relying on the present indicated income in his appeal from this order, has not shown on the record the actual income of the new business. However, the courts are always available for a petition to modify the order as made, should the record of the earnings of this company indicate that this order exceeds the limits as set forth in the act.

Order affirmed as amended.